Here we hear we hear we the United States Court of Appeals for the 11th Circuit is now open according to law. God saves the United States and his honorable court. Good morning. It's our last day of oral argument for the week. We have four appeals to hear this morning. We're very fortunate to have our colleague from the middle district of Alabama, Chief District Judge Emily Marks, here with us today as she was on Wednesday as well. We have a custom of inviting district judges from within our circuit to sit with us after they've been on the bench a couple of years. And this is Judge Marks is a first opportunity to do so. So we really appreciate her shouldering the extra work this week over and above the work that she has for the middle district of Alabama. Thank you, Judge Marks. Glad to be here. Thank you, Chief. Counsel, we're familiar with your cases. And we've read your briefs, the authority cited in your briefs at least portions of the record. So you don't have a lot of time this morning. Get straight to the heart of your argument the points you want to make. You've made your points in your brief, but now's an opportunity to have a conversation with the court. We're probably going to have some questions. Be mindful of the clock when it expires, it's time to finish. But if you're answering a question from the court, do feel free to finish your answer that won't cut into rebuttal time if you haven't. Our first case is United States versus Hawkins, Miss Devine. Thank you, Your Honor, and may it please the court and counsel, Jenny Devine on behalf of Jamie Hawkins. There's a critical difference between ineligibility for government benefits and theft of government benefits. For a jury to find a knowing and willful theft of government benefits, there must be evidence of specific intent to tell material lies, not just statements the agency believed were untrue in an ineligible case, but statements the benefits they knew they weren't entitled to. Testimony explaining an agency's policies to a jury is not evidence that those policies were ever communicated to a defendant. Based on testimony here, the Social Security Administration appears to have a policy to base eligibility for children in multi-household living arrangements on primary custody or where the child principally resides, which they seem to determine based on custody orders, school enrollment, and also interviews with the parents. The problem is that applicants like Miss Hawkins don't necessarily understand this process. How is she supposed to know? The SSI and PE applications have no custody or custody percentage questions. There's no place to state how often a child lives with a parent. Instead, the agency assumes this will come up in conversations with the in multi-household cases. No one records the employee's conversation with the applicant. Council, let me ask this. You agree that lives with has a plain meaning. In other words, as I understand your argument, you don't agree. You wouldn't say it's ambiguous. You would just say it's undefined. Is that right? It's both undefined and there's no recorded conversation about any other... We'll get there, but I just want to add, answer my question. You agree it's unambiguous. It has a meaning that plainly could be understood by the average person. The question is simply, is that the meaning that's been applied by Social Security? That's what I understand your argument to be. Yes, Your Honor. We understand each other. I guess my question then is, I agree with you that at least in some sort of But doesn't CH also live with her father? Yes, Your Honor. CH also lives with... Okay. So as I understand it, and I've looked through every exhibit here, there are tons of instructions where your client did receive, where it was told to her very plainly that when filling out the application, it was required that she disclosed where CH lived. And if we all agree that CH lived both with and with her father, then wasn't her obligation to disclose that to the Social Security Administration? No, Your Honor, because that definition that is in all of the exhibits is for one household. And so as a point of reference, there's fact sheets that the court seen that is attached to their discrimination paperwork. And that's starting back in 2006 with government exhibit 10A6, but this is showing up over the years in the same paperwork. And on those fact sheets, when it... Okay, let's look. I'm looking at, for instance, Docket Entry 60-10 at 1, which is the May 2006 instructions. It says simply, the amount of SSI we paid depends on CH's living arrangements or the living arrangements of the claimant. His living arrangements are where he lives, with whom he lives, and how his food and shelter expenses are paid. It doesn't say household. It just says who he lives with. And Your Honor, the fact sheet attached to that explaining how they determined income and resources says that the law requires us to consider the income and resources of parents who live in the same household as the child. Right, but it also says other things in terms of what has to be explained, including how his food and shelter expenses are paid, right? That's not household dependent. But it is if you have your... But counsel, this isn't the argument you made. The argument you made, both below and here, is that lived with is not a defined term, and that they're imposing a term. And I tend to agree with you that, at least as plainly understood, that could mean that CH lives with the defendant here. But it doesn't exclude that he also lives with lots of other people that weren't undisclosed here. And in addition to that, that the defendant, or that CH is food and shelter by someone other than was disclosed here, right? Well, not for all of the years under the indictment period. And so... Well, it doesn't matter for all. It just needs to be for at least one. And she did, when she was asked during the redetermination whether there were additional resources, she disclosed that Mr. Hawkins had given her some amount of money for, I believe, July 2010 through July of 2011. Yeah, but the testimony from Mr. Hawkins is from Russell, is that he paid all the expenses after a certain time, or the vast majority of his food, water, shelter expenses. And we know that, at least for some periods of time, that the claimant here, CH, was living with him at least on average 75% of most weeks, and in some cases over 90% of a week, right? And the 90% testimony was corrected on cross-examination, where Defense Counsel asked, between the years of 2010 and 2014, did you have him 90% of the time? And he corrected and said, I had him the majority of the time. Right. He said the 90% was related to the summer of 2010. One period of time over a period of time. Right. But let's even take that out, although that's the exact period when she applied for services, so that seems to be a pretty relevant period. But even taking that out and using the custody arrangement, it's about 75% of most weeks that he's spending his time with Russell. And so if Russell is, and Russell's testimony is, I paid for most of this stuff. So how is, how did she not understand that she had to disclose where the food and shelter expenses are coming from? Because there's no multi-household definition for people who have a divorce situation with a child who has this. I'm just reading right from, I'm just reading right from the paper that she's given. That was the one exhibit, page seven of that same exhibit. The law requires us to consider the income and resources of parents who live in the same household with the child. We count some of the parent's income and resources when the child is living in the parent's household, is not married, and is under the age of 18. Then in September of 2016, she's told, I'm sorry, you must tell us every time there's a change, a change may make the SSI monthly payments bigger or smaller. And then it defines changes, where CH lives. So she knew that where he lived is dependent on it, how he lives, if he moves from one household to another, and more importantly, help he gets from others, the amount of help he receives goes up and down. That's not household dependent. I would argue that it doesn't say that it is not household. I mean, it's household dependent for her based on- Counsel, take a look at docket entry 60-11 at five and six. The part on where it says change, where it says he gets help from others, does not say anything about the household. Nothing. Your Honor, the testimony by the agency witnesses specifically says that they don't have a definition for lives with, don't have a definition for custody, don't have a question for the percentage of custody- The question isn't what they're- Counsel, the question seems to me is that it's not what the agency defines it. It's what she understood, right? It goes to, as you pointed out, it's an intent crime. That goes to her intent. So if she has, as I understand these exhibits, she's received over and over again in 06, 08, 2010, and then again at the redeterminations, what these with, and that you have to disclose that, and who pays for his food and expenses, that those things have to be disclosed, then why does she not know that those things have to be disclosed accurately? I don't think that's a clear and definite definition for multi-households. And so if one parent comes in, they're just looking at where he lives, that's with me, what is being paid for while he's on my roof for- Counsel, Counsel, look at the- 100% of the time. Again, look at the exhibits. In terms of help he gets from others, I don't see as stating anywhere where it has to be household dependent. It's just where, and by the way, it wouldn't be. For instance, let's say grandma who doesn't live there, you know, pays $1,000 a month for her disabled child or disabled grandchild. That would have to be disclosed, right? It doesn't matter whether she lives there or not, or whether he's in the household. I don't think it would be a reasonable belief for grandma to think that the child lived with her. It's not live with, you're mixing apples and oranges. There's the live with requirement, and then there's the disclosing what expenses are paid for requirement. So the expenses have nothing to do with the household or live with. It just says who gives money to help, right? And when CH, her son, is in her household, she's the one paying for those expenses. Yeah, but that doesn't ask what expenses are you giving? It's from his perspective that she's filling it out. What expenses is he getting? Back in 2006, when they're still married, and there's applications going and benefits going, they're still married. They have a shared bank account, and they use Russell's income to determine benefits and say you're not eligible. A few months later, they're still married. They use her income because she's got an independent bank account now that she's using, and she reports child support he's paying to her, and that reduces the amount of that she understands. And so none of those things were happening during the indictment period. I know, but she understands the obligations. You're right that as the facts were then, she didn't make any false statements, and she's not charged with any false statements then. But the question of what her intent is, what she knew, she knew these obligations at that time. So she knew from 06 and 08 that she had to disclose if she was going to apply for benefits on behalf of household expenses he receives goes up or down. Right. And so it would be different if they first were still married, which they obviously were not, if they had a shared bank account, which they did not, or if there was child support coming into her household, which there was not. Not just child support. He gets 75% of the time, at least, food, shelter, water, clothes, whatever from the father. From in another household. It doesn't specify that there. Council, I know you want to read it into there, but I just don't see where in these, and show me, I mean, show me in the exhibit in the part about where he gets help from, show me where it's household dependent. And that's the problem, Your Honor, because they don't have any definite or clear way. Let me put it this way. If the tooth fairy left $1,500 under the pillow every month for a year, and she used that money to pay for food, shelter, water for CH, would she not have to disclose the tooth fairy money? Absolutely. So then why is Russell not the tooth fairy? Because he's in another household, Your Honor, and there's nothing in the data. So is the tooth fairy. The tooth fairy lives in the fairy land. And Your Honor, I see I'm out of time. May I answer that? You can keep going. I've got a couple questions. Yes, Your Honor. And again, I would just say that the documents that you're referencing, that's exactly the problem here, is that the living arrangements are for one household, and the testimony bears that out, that the agency witnesses are assuming that these parents live together. What are we to make of what could be viewed as lies? So when there's another review by the administration in 2014, her PE report stated that she used the benefits for food or housing, but not for food or housing, but for other expenses such as clothing, education, medical and dental expenses, recreation or personal items. And in fact, the investigation showed that's not how she was spending the money. Doesn't that, don't those misrepresentations allow reasonable inference of a judgment? I would submit no, Your Honor. And those are the bases for count two, the 1001 charge. And there's several important points I wanted to make about count two. They may support that chart. That doesn't mean they can't support something else. I agree with that in a different case. I would submit here they do not. And I would say, and I think Judge Luck already pointed out, there's no 1001 charge for the application in 2010, neither the SSI or the PE application. There's no 1001 charge for anything in two out of the four years. The 1001 count is one document in July of 2014, where she involved involving just a portion of the benefits. And that proof for that count goes to a different mens rea element. First of all, that's element four of count two that she acted willfully knowing that the statement was false. And that leads to my last point on this is that it was not a lie to cover up the fraud from the beginning in 2010 during those applications. So it's not fraud to cover up lavish spending that she's doing taking vacations with lavish spending for lifestyle items. This is a false statement to cover up poor accounting practices. She's supposed to have a separate account for CH to only use it for certain things. And she's basically allowing that money to come into her main account and just use it to pay off household bills. But it's not for lavish spending. I think if it were, that would be a reason. She has to she has to represent that she not that the money that she's going to obtain and benefits are going to be used for certain purposes. Yes. And if she uses it for some other purpose, and she's committed the violation, hasn't she? And she used it, I would say, for the most part for the things that she was supposed to just over the amount she was supposed to answer. Yes. If you spend it on other purposes, it's a violation. It's definitely would be facts underlying the 1001 charge, which we're not contesting. I would submit that no, not necessarily for fraud, depending on what those items are. If it's reasonable under to be spending it on rent and bills for CH just over that amount. I would say no, not necessarily. I would say if it's lavish items, then yes. Judge Marsh, do you have any questions? I don't. You've covered it. Thank you. Miss Sweeney. You'll keep your rebuttal time. Mr. Thank you. I may please the court. Good morning, your honors and counsel. Sarah Sweeney on behalf of the United States. I want to pick up kind of where y'all were ending, which is with the lies. And I want to actually start back with the January 2013 redetermination. So there's actually two places here where Miss Hawkins clearly deliberately lies, even beyond. Let me let me ask you, do we do we get? I'm sorry, judge. A lot. Go ahead. Please, judge. Do we get to the lies until we get to the notice under more? Don't we have to under the more case? First, determine whether or not the defendant had notice. And then we get to the behavior. I think you're on a sheet. Well, I think there's clear notice here from all the repeated times. So as you all clearly know, Miss Hawkins applied for benefits three different times. Each time she's told that the living arrangements matter. She's told that she has to report help that her son receives from outside from others, from outside of the household. That's who others are. And and she's told that she needs to report any changes. So to me, that notice clearly takes this outside of the more context. The other thing that happens is her first application is actually denied because too much income is available to her son. Council, Council, let me stop you. Is this a problem of charging or a problem of the theory in which you presented? Or does that not matter? And what I mean by that is this. Hold on. What I mean by that is this. So Judge Pryor asked you and I think he's right that a fraud could have been charged simply based on the fact that there is a requirement that all money be spent for one purpose. And she clearly spent it for another purpose. A fraud could have been charged just on that. And in fact, that was proven here. However, as I understand the two theories that were presented by the government, and correct me if I'm wrong, theory one was the lived with theory. And theory two was the resources theory. In other words, they received resources. She didn't report resources that were received from someone else. The third theory that I referenced, the lies were not, were not charged and were not at least argued to the jury as part of the fraud. Right. Is that a fair, is that a fair statement? Um, the, the lies were you the lies. So there was a count to that was 1001 counts. So there was a lie charge specifically. And then other lies were used to argue to the jury to support an inference that Miss Hawkins understood knew knowingly converted the resources. It's evidence, it's evidence of intent, but it wasn't the fraud theory was not the misspending of the money. The fraud theory, as I understand it was, she didn't report that he lived most of the time with Russell, and she didn't report that Russell was contributing money to his support to CHS support. That's correct. And I think, but I think there's two lies that both strongly support her knowledge that she that this was an unlawful taking. The first is if you look at the January 2013 redetermination, which is government exhibit 10 a 17 in January of 2013, she's directly asked if her son receives help or money from any person not living with him for food, rent, or utilities. And she answers that question. No, for any period after 2011. Um, so starting, she, she does admit in that interview that for a period in 2010 and 2011, her son received some money from Russell Hawkins. But then starting in 2011, she answers that question. No, that is a direct lie about the issue here. So even, even if you just wanted to start by looking at January of 2013, and say that before then she couldn't have understood what she was required to report, although I don't think that's supported by the record, but even then the jury's verdict is 100% supportable on that period. Except that, except that this goes to, to judge marks is excellent question, you still have to establish that she knew at the point that she made that lie, that she was required to report that, right? We do, but I think all of the things that we've already discussed in the previous applications established that. Your opposing counsel says that those terms are, each of those things are qualified by two things. One, the live with requirement is just simply unclear. And even the agency doesn't really know. And two, she says they're specific to household. Either the income or resources have to be received by household, or at least could be understood that way. Or two, and two, the live with requirement was household based, not, not sort of plainly understood based. And that's really what I understand Ms. Devine to be saying. I apologize if I'm mischaracterizing her argument in any way. Please respond to that as to why those documents that we went over cannot be read to be limited to the money that's received and the living arrangements that are received per household. So your honor, so as to the first point that, well, let me, I guess I'll start with this. I think lives with is too narrow of a lens to look at this through. And the SSA letters to Ms. Hawkins show that over and over. They refer instead to living arrangements, which they define as where a person lives, who they live with, and how their housing and food expenses are paid. It's what I read. Yes, Judge Luck, and as you said, it's in multiple ones of these letters. So first lives with is far too narrow. Second, nothing about that is limited to household. And then again, as you pointed out, Judge Luck, the letters go on to say, in addition to living arrangements, you have to tell us about assistance that this person receives from others, help that they get from others. And others would not be someone in your household to begin with. And you can't have it both ways. You can't say, oh, I didn't know that person, some of, not part of the same household for this purpose, but it is over here. I mean, you've got to, it seems to me, one of the problems for the defendant here is that she'll make that argument with respect to one theory, but then forget it with respect to another. And I think, too, another important point in that same realm to keep in mind is, this is a sufficiency argument, which is, can any reasonable fact finder find guilt here? Yeah, and that gets me to a question about these theories. I mean, the way the jury was instructed, was it not, was pretty broad, wasn't it? Yes. And that is that the money belonged to the government, the defendant fraudulently appropriated the money to her own use, for the use of others, and did so knowingly and wealthily with the intent to deprive the owner of the use of the property. It's that, it was that kind of charge, wasn't it? Yes, Your Honor. And the jury could consider any evidence it wanted to reasonably support that charge, right? That's correct, Your Honor. There weren't charges of separate theories. No, there was not. Or more specific than that, right? No. Or an indictment on some kind of alternate separate theories, right? No, Your Honor. Okay. And then just to conclude on the lies point, to go to the lies to the SSAOIG about the uses of the money, I do think those are relevant to her intent in the theft of the benefits under the 641 count, because part of Ms. Hawkins' argument here is, this is all very confusing. I didn't understand what I was supposed to do. And her ability, her knowledge that she needs to lie and say that she used the benefits in certain ways in order for those uses to be legal, it indirectly supports an inference that a reasonable jury could make that she understands the SSA system generally. And this is a system that she's been involved with for at least eight years based on the evidence in front of the jury. And she's just received these notices and this information over and over. And unless there are any other questions, the last point I would like to make another inference that the jury could draw here is, when Ms. Hawkins applies for benefits in September of 2006, she has primary custody, and she's honest about the expenses that Russell is paying for the child. And she gets $150 in benefits. Then when you jump to August of 2010, she does not have primary custody, but she also says Russell is paying nothing. And she gets three times more benefits in that application than she did when she was honest back in September of 2006. These are inferences that a reasonable jury could rely on to find that she knew she wasn't entitled to these benefits. Except your opposing counsel is going to say, and go back to the household issue, in 2006, they were living at least arguably in the same household, whereas in 2010, they weren't. And that indicates her understanding that this was household dependent. I mean, that's what your opposing counsel is going to say. So I'm not sure that gets us there without knowing the instructions of what you had to report and what changes you had to report. That seems to me to be the important thing under Moore. And she did know that because she had already applied in May of 2006. But I'd say two other things with respect to the September 2006 application. One, they were not in the same household. By that time, they were separated. And she was reporting, they were still married. Yes, Your Honor. But they didn't, in the May application, she reported they shared a bank account. In the September application, she said they didn't and only reported, well, I don't know if she said they didn't, but that information wasn't included in what she told SSA. But she said he pays $1,500 of the mortgage. And look, yes, could there be some theories under which maybe a jury could find someone in that specific instance? Didn't fully know, yes. But a reasonable jury also could make the inference that she did know and that that did give her knowledge. It's about what a reasonable fact finder could find, not what the only thing a fact finder could find here. One of the things, too, that she understood was that when Russell took over primary custody and informed the administration that CH now lived with him, not her. And this is after they're divorced, right? Yes, Your Honor. The administration stopped paying benefits. That is correct. It's an interesting time period. She did. So in November of 2008, she loses primary custody and benefits stop being paid. Now, there's no evidence in the record that she was directly told why. But the co-circumstance of those time periods, again, a jury can draw an inference from that that she knows and a reasonable person would know. There's also nothing to suggest that she followed up with SSA at that point and said, hey, what happened to these benefits? Why am I no longer getting them? And instead, she just waits two years and reapplies. And so there are so many both issues showing her her actual notice of what she needed to report. And then on top of that, inferences that the jury could draw from other evidence, all of which show that she knew she was not entitled to these benefits on behalf of her son. Thank you, Your Honors. Okay, Ms. Devine. Thank you, Your Honor. I wanted to start with 2008. The government's already said that there was no evidence that she was told why. There's also evidence from Agent Flax that she told, that Ms. Hawkins told Agent Flax that she didn't know why. The agent specifically asked her that question. She said, I have no idea why. In 2008, the confluence of the custody also occurred alongside. Of course, the jury doesn't have to believe that. They certainly don't have to. But without an admission and without any direct evidence, there's really no inference to base any of that off of when you've got the divorce occurring alongside the custody change as well. After that, in the two years between 2008 and 2010, Ms. Hawkins also has another child. So she has another son. That alone would be cause for any person to go into Social Security and at least inquire about whether that change has an effect on benefits. Summer of 2010 also saw Mr. Hawkins regain the marital home back that had been in foreclosure proceedings. And I think he testified a little bit about that. So there's other sort of evolving financial and household changes occurring in this time period. But I want to go to more quickly. I would argue that, and I have argued in my briefs, that more absolutely applies here. And it applies in the sense that notice matters. Agencies need to let people know what their rules and regulations are before they can be prosecuted for fraud. The problem, though, counsel, is that the record is a lot different. And the government didn't present any evidence of what notices these folks had leading up to it. They just sort of said they had money, the guy died, they kept collecting, and that's it. And we rightfully said, no, you need to show that they knew that that was a wrong thing to do. But here you have an enormous record of notices that were given that seemed to suggest that she needed to report income that was received from others, not qualified by who those others are. And so I'm having a hard time not understanding why that's not notice that she knew to do something that she didn't do. And this whole trial, Your Honor, was about living arrangements. So let's be clear, the definitions put income and resources under the umbrella of living arrangements in their documents. And the testimony and the argument in this case is all about the living arrangements. Everything circles back to that. Their own witnesses say that for our purposes, it's primarily living arrangement. And then the agent says this is a discrepancy on living arrangements. The whole trial boils down to that. And I would say there's some direct questions that could have been asked here that would have provided indisputable clarity for everybody involved, jurors included. And those are what came out in cross. Has the child applicant spent the night at your home for more than 15 of the last 30 days? Has the court awarded a parent other than you primary custody? Has the court ordered you to pay child support? None of this is ever asked, not just in Ms. Hopkins, but of any parent that walks in. And in this day and age with the prevalence of divorce, the agency ought to be including multi-household living arrangements in their forms and in their conversations with applicants. Thank you very much. Thank you. We have your case and we'll move to the next one.